UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Ardak Akishev, *et al.*,<br><br>     Plaintiffs,<br><br>                    v.<br><br>Sergey Kapustin, *et al.*,<br><br>     Defendants. | Civil Action No.<br>13-7152(NLH)(AMD)<br><br><br>**OPINION** |

**HILLMAN, District Judge**

   This case concerns a "bait-and-switch" fraudulent scheme masterminded and operated by defendant, Sergey Kapustin, through deceptive advertising aimed at luring international customers to wire funds for automobile purchases and then switching to higher prices, misrepresenting mileage, condition and location and ownership of these vehicles, extorting more funds, and failing to deliver the paid-for-vehicles. Plaintiffs, a group of twenty-one victims, asserted claims against Kapustin, his corporate entities, and other related individuals, for violations of, *inter alia*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a-c).  Presently before the Court is the motion of Plaintiffs for attorneys' fees and costs relating to the imposition of sanctions against Kapustin's former attorney, Boris Parker.

   This case has a tortured procedural history, which is comprehensively detailed in the Order granting plaintiffs'

motion for final default judgment against Kapustin and his corporate entities. (Docket No. 272.) Relevant to the instant motion, the summary of the events leading to Mr. Parker's withdrawal from the case is as follows:

> On June 3, 2014, Plaintiffs filed their Motion for an Order to Freeze the Assets of Defendants and Expedited Discovery Related to Assets pursuant to Federal Rule of Civil Procedure 65 representing the funds Plaintiffs wired to the bank accounts of Global Auto, G Auto, Effect Auto, and Global Cars to purchase the motor vehicles advertised for sale by Global Defendants and received neither the vehicles nor the refunds. If the funds remaining in those accounts were insufficient, Plaintiffs requested the Court to direct Defendants to place the funds in an escrow account and to permit expedited discovery related to the disposition of the funds and Defendants' assets, including their ownership of hotel "Motel Road 66" in Finland. Having received the Global Defendants' opposition, in which they did not dispute receiving the Wired Funds, on September 5, 2014, the Court held an evidentiary hearing on the Asset Freeze Motion.
>
> On September 23, 2014, to avoid the immediate freeze of the corporate Global Defendants' bank accounts, Plaintiffs and Global Defendants agreed to and the Court entered the Consent Order, Docket No. 80, to deposit into the registry of the Court $400,000.00 in monthly installments within 90 days of the Consent Order and to provide expedited discovery related to the disposition of Plaintiffs' funds and Defendants' assets. Global Defendants failed to comply with the Consent Order and dissipated assets and depleted their bank accounts in order to avoid compliance with the Consent Order. On October 7, 2014, in order to evade his obligations under the Consent Order, Defendant Sergey Kapustin filed his Chapter 13 Bankruptcy Petition (Case No. 14-30488).
>
> On October 23, 2014, Plaintiffs moved for contempt against Global Defendants and their counsel. On October 24, 27, 28, 29 and November 3, 2014, the Court held evidentiary hearings during which it was established that while Global Defendants websites www.globalautousa.com, www.effectauto.com, www.effectauto.ru advertised over 4,000 vehicles as "in stock", Defendant Kapustin testified only about 14 vehicles were actually owned by the corporate Global Defendants, and some vehicles were

2

      sold twice through the Websites to foreign customers using electronic mail communications and international bank wire payments.

      The Court made preliminary findings that there was probable cause to believe that Global Defendants have committed at least two predicate acts of mail and wire fraud in the furtherance of a RICO enterprise through a pattern of racketeering activity conducted operating through the Internet. On October 27 and October 29, 2014, this Court ordered, pursuant to 18 U.S.C. § 1964 and, *e.g., Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 498 (1985) (explaining that RICO is to be read broadly and liberally construed to effectuate its remedial purposes), that the Defendants' corporate bank accounts to be frozen and the Websites to be shut down immediately (Docket Nos. 106; 110).

The case has taken many twists and turns since October 2014, with Kapustin entering into a consent judgment with Plaintiffs in the amount of $2,228,069.29 on September 21, 2015.[1] But, it is the circumstances surrounding the entry of the September 2014 consent order and Kapustin's filing for bankruptcy[2] in October 2014 that form the basis of the Court's

---

[1] Despite the entry of the consent judgment with Kapustin, the case marches on. Still pending is Plaintiffs' motion for summary judgment against individual defendants Irina Kapustina and Michael Goloverya for their part in the RICO conspiracy to defraud the Plaintiffs, as well as the corporate entities' most recent counsel's motion to be relieved as counsel. Kapustin has assigned his cross-claims against defendants Empire United Lines and Michael Hitrinov to Plaintiffs, who have been substituted as Plaintiffs for those claims. Service has just been effected upon Empire United Lines and Hitrinov.

[2] This Court withdrew the reference of Kapustin's and the corporate defendants' bankruptcy petitions from the bankruptcy court pursuant to the first sentence of 28 U.S.C. § 157(d), and ultimately dismissed the bankruptcies as fraudulent filings. (See B.R. Case Nos. 14-30488, 14-32520, 14-32521, 14-32522, 14-32523.)

imposition of sanctions on Mr. Parker, and give rise to Plaintiffs' request for $203,000 in fees and costs.

On April 27, 2015, the Court conducted an evidentiary hearing on Plaintiffs' motion for sanctions against Mr. Parker and found that Mr. Parker's conduct relating to the signing of the Consent Order was "objectively unreasonable" in violation of Fed. R. Civ. P. 11. One issue that troubled the Court concerned Kapustin's wire transfer of funds to Mr. Parker's firm's trust account and the funds being applied to Mr. Parker's fees. Another issue concerned Mr. Parker's apparent lack of due diligence into investigating whether Kapustin truly had the assets he pledged to fulfill the $400,000 consent order.

The Court ordered Mr. Parker to submit an accounting of those transferred funds, and notify the disciplinary authorities in every state and court where he is licensed.[3] Mr. Parker complied on May 11, 2015. (Docket No. 199.) The Court also directed Plaintiffs to file a formal motion for their requested sanctions so that Mr. Parker could respond.

In their motion, Plaintiffs request that the Court award their fees for attorney time and expenses incurred from July 7, 2014 through April 27, 2015 in connection with preliminary injunction briefing and hearing, contempt hearings and related briefings, discovery, and sanctions hearing and briefing in

---

[3] The Court also relieved Mr. Parker and local counsel from their representation of Kapustin and the corporate entities.

4

this matter, totaling approximately $203,000. Mr. Parker opposes Plaintiffs' motion, arguing that he acted in good faith at all times, and that monetary sanctions would be improper under the circumstances of this case and the law governing the imposition of sanctions.

Rule 11 provides,

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

An attorney's signature certifies that the attorney has satisfied three duties: (1) that he has read the documents; (2) that he has made a reasonable inquiry; and (3) that he is not acting in bad faith. Each duty is independent; the violation of one triggers Rule 11 sanctions. <u>CTC Imports & Exports v. Nigerian Petroleum Corp.</u>, 951 F.2d 573, 578 (3d Cir. 1991).

The main issue in this case is the reasonableness of Mr. Parker's inquiry into the legitimacy of Kapustin's pledge to

5

meet the $400,000 promised in the consent order. In order to determine the reasonableness of an inquiry, a court applies an objective "reasonableness under the circumstances" standard. Id. (citation omitted). In applying this standard, the "court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Id. (citations omitted). Because the standard is a fact specific one, the court must consider all the circumstances. Id. (citations omitted). "Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; . . . or whether he depended on forwarding counsel or another member of the bar." Particularly relevant is "whether [one] is in a position to know or acquire the relevant factual details." Id. (citations omitted).

At the April 27, 2015 hearing, the Court found, "I would not visit Mr. Kapustin's sins on you, except that it appears to me that you did not engage in a diligent inquiry, [or] ask the questions that needed to be asked about what assets were truly available to meet the obligations of the consent order. . . ." (April 27, 2015 hearing transcript, Docket No. 198 at 35.) The Court concluded, "Rule 11 sanctions are necessary and appropriate in this case to be imposed upon you for the

6

signing of the consent order, not the initial brief since at the time there does appear that there were bank accounts with hundreds of thousands of dollars, but if you had asked or made inquiry or demanded documentation by September, . . . you would have either known or should have known that Mr. Kapustin was engaged in an elaborate shell game to defraud many, many people by emptying his bank accounts after this lawsuit was filed, by directing payments to offshore banks, by transferring assets overseas, by pledging or offering to pledge assets that he didn't own . . . . [and] [a]fter the signing of that order, Mr. Kapustin went about arranging to file bankruptcy . . . . If you had engaged in a reasonable factual inquiry, you would have learned that Mr. Kapustin had insufficient liquid assets and no reasonable prospect of having liquidated assets sufficient to meet the terms of the consent order." (April 27, 2015 hearing transcript, Docket No. 198 at 38-40.)

    Having found that Rule 11 sanctions against Mr. Parker were warranted, the Court must now determine the nature of the sanctions. Rule 11 provides, "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable

7

attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c).

Plaintiffs ask for $203,000 in fees and costs, which they claim they incurred as a result of Mr. Parker's lack of reasonable inquiry into Mr. Kapustin's ability to comply with the consent order. In April 2015, when the Court found that sanctions were warranted against Mr. Parker, the Court did not use the "wisdom of hindsight" to conclude that Mr. Parker's actions in September and October 2014 had been made without "reasonable inquiry." The Court may use, however, the "wisdom of hindsight" of the past year to inform the nature of the sanctions to be imposed on Mr. Parker.

Without detailing the myriad of ways, it is clear that since the inception of this litigation, Kapustin has engaged in a protracted effort to defeat the legitimate claims of Plaintiffs, mislead his and Plaintiffs' counsel, and cavalierly disregard this Court's Orders. Most recently, Kapustin failed to appear at a Court hearing, without notifying the Court that he left the country and was in Germany. It has also come to the Court's attention that during the cessation of operations of the corporate entities named as defendants here, Kapustin may have resumed his international automobile fraud scheme under a different corporate name.

Even though the Court still firmly concludes that Mr. Parker should have conducted a more meaningful investigation

8

into Kapustin's representation of his assets as a pledge to satisfy the September 2014 consent order, the manipulative and fraudulent conduct by Kapustin appears to have spared no victims, including his attorneys.[4] Mr. Parker certifies that Kapustin owes him and his firm over $125,000 in fees and costs associated with his representation of Kapustin in this and other matters. That, along with the Court's on-the-record sanctioning of Mr. Parker and his obligation to inform the Minnesota and Oklahoma bars of this Court's sanction, appears to suffice "to deter repetition of the conduct or comparable conduct by others similarly situated." Considering what the Court knows now about Kapustin's actions, it does not seem unrealistic that Plaintiffs would have incurred the same or similar fees and costs from September 2014 even if the consent order had not been entered into.

Accordingly, the Court finds that the sanctions already imposed on Mr. Parker satisfy Rule 11's purpose and are appropriate under the circumstances of this case. Plaintiffs' request for $203,000 in fees and costs as an additional sanction is not warranted. The Court reaffirms, however, its

---

[4] Indeed, by email on the Sunday evening before the Tuesday, December 8, 2015 hearing, at which Kapustin failed to appear without notice to the Court, Kapustin terminated his most recent corporate counsel's representation, claiming that his counsel was not acting in his best interest. At the hearing, counsel stated that just a few hours before he received the email he had spoken with Kapustin, who had not provided him with any indication that he was dissatisfied with counsel's representation. As noted above, counsel has filed a motion to be relieved as directed by the Court. (See Docket No. 305.)

9

admonishment to Mr. Parker about his lack of due diligence into his client's ability to satisfy a consent order that prevented the entry of an injunction that Plaintiffs were clearly entitled to.

    An appropriate Order will be entered.


Date: December 16, 2015        s/ Noel L. Hillman  _
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.