**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Ardak Akishev, et al.,<br><br>    Plaintiffs,<br><br>                    v.<br><br>Sergey Kapustin, et al.,<br><br>    Defendants. | Civil Action No.<br>13-7152(NLH)(AMD)<br><br><br>**OPINION** |

**APPEARANCES:**

ANNA V. BROWN
MARIA TEMKIN
BROWN LEGAL CONSULTING LLC
1959 THE WOODS II
CHERRY HILL, NJ 08003
    On behalf of plaintiffs

MICHAEL GOLOVERYA
IRINA KAPUSTINA
137 GRASSHOPPER DR.
WARMINSTER, PA 18971
    Defendants appearing *pro se*

**HILLMAN**, District Judge

    Presently before the Court is the motion of plaintiffs

for summary judgment in their favor on their claims against

defendants, Irina Kapustina and Michael Goloverya, for alleged

violations the Racketeer Influenced and Corrupt Organizations

Act, 18 U.S.C. § 1962(a-c) (RICO).  The claims of plaintiffs,

a group of twenty-one victims, concern a "bait-and-switch"

fraudulent scheme masterminded and operated by defendant,

Sergey Kapustin, through deceptive online advertising aimed at

luring international customers to wire funds for automobile

purchases and then switching to higher prices; misrepresenting mileage, condition, location and ownership of these vehicles; extorting more funds; and failing to deliver the paid-for-vehicles.  For the reasons expressed below, plaintiffs' motion will be denied.

## BACKGROUND

Plaintiffs' brief in support of their motion for summary judgment comprehensively summarizes their claims and the procedural background of this labyrinthine case.  (See Docket No. 270.)  As Plaintiffs explain, Global Auto Enterprise is a group of individuals (four family members and at least one employee) and affiliated entities owned by the same family members who run a fraudulent internet auto sales scheme.  The fraud is commonly known to law enforcement as a "bait and switch" tactic.  Global Auto Enterprise targets online unsophisticated foreigners from the former Soviet Union by advertising vehicles slightly below the market value on its glamorous websites GlobalAutoUSA.com and EffectAuto.com.

To lure the victims Global Defendants provided false odometer readings or did not disclose the mileage at all, withheld the information that the vehicle had been declared "total loss" after an accident or flooded by hurricane Sandy with "Salvage" title issued.  They assured the victims that the cars were in "excellent" condition.  Most vehicles advertised on the websites did not actually belong to any Defendants.  Instead, they used images of cars and information

about them gathered from other online car sales sites to advertise these vehicles as "bait." Once Plaintiffs wired the money, the "switch" part of the fraud began.

Defendants wrote apologetic emails that claimed unanticipated delays in delivery and refused to issue any refunds. Months later, the buyers were offered a different car for just a few thousand more. Buyers – by then desperate to get anything at all out of the deal – wired additional money. Plaintiffs Kondratuk, Borzenko, Maniashin, Lisitsyn, Pukir, Lukyanov, the Yamkoviys were pushed to make several international wire transfers. After the switch, even Plaintiffs (Kobin, Telin, Borzenko and the Zverevs) who were seemingly buying the same-priced cars also got hit with unloading fees, port fees, transportation fees, storage fees, customs fees, and other fees, in excess of several thousand dollars, which were not previously disclosed to them. That was also a scheme to push the victims to cancel the purchase. Global Auto Enterprise refused to release the cars unless those charges were paid.

On April 4, 2014, Plaintiffs filed an Amended Complaint. On June 3, 2014, Plaintiffs filed their Motion for an Order to Freeze the Assets of Defendants and Expedited Discovery Related to Assets pursuant to Federal Rule of Civil Procedure 65 ("Asset Freeze Motion") representing the funds Plaintiffs wired to the bank accounts of corporate Global Defendants. On

September 5, 2014, the Court held an evidentiary hearing on the Asset Freeze Motion.  On September 23, 2014, to avoid the immediate freeze of the corporate Global Defendants' bank accounts, Plaintiffs and Global Defendants agreed to and the Court entered a Consent Order, Docket No. 80, to deposit into the registry of the Court $400,000.00 in monthly installments within 90 days of the Consent Order and to provide expedited discovery related to the disposition of Plaintiffs' funds and Defendants' assets.  On October 7, 2014, in order to evade his obligations under the Consent Order, Defendant Sergey Kapustin filed his Chapter 13 Bankruptcy Petition (Case No. 14-30488).

On October 24, 27, 28, 29 and November 3, 2014, the Court held evidentiary hearings during which it was established that while Global Defendants websites www.globalautousa.com, www.effectauto.com, www.effectauto.ru ("Websites") advertised over 4,000 vehicles as "in stock", Defendant Kapustin testified only about 14 vehicles were actually owned by the corporate Global Defendants, and some vehicles were sold twice through the Websites to foreign customers using electronic mail communications and international bank wire payments. Based on the evidence presented the Court made its preliminary finding that there was probable cause to believe that Global Defendants hade committed at least two predicate acts of mail and wire fraud in the furtherance of a RICO enterprise through a pattern of racketeering activity operated through the Internet; on October 27 and October 29, 2014, this Court

4

ordered that the Defendants' corporate bank accounts to be frozen and the Websites to be shut down immediately (Docket Nos. 106; 110).

On November 4, 2014, corporate Global Defendants filed their Chapter 7 bankruptcy petitions as follows: Global Auto Sales - Case No. 14-32520; Effect Auto Sales, Inc. - Case No. 14-32521; G Auto Sales, Inc. - Case No. 14-32522; and SK Imports, Inc. - Case No. 14-32523.  The bankruptcies were subsequently dismissed for bad faith pursuant to Sections 105(a), 305(a), 349 and 707(a) of the Bankruptcy Code.

On February 17, 2015, Plaintiffs moved for sanctions against Global Defendants and their counsel ("Sanctions' Motion") including entering a default judgment as a sanction for their continuing litigation misconduct including numerous fraudulent representations to the Court, dissipation of assets in order to avoid compliance with the Consent Order, concealment of assets in foreign jurisdictions, filing bankruptcy petitions in bad faith for the purpose of invoking the automatic stay and frustrating this Court's jurisdiction, and continuing delay resulting in significant prejudice to Plaintiffs.

On April 27, 2015, the Court held an evidentiary hearing and granted the Plaintiffs' Sanctions Motion.  On May 27, 2015, Plaintiffs submitted their Application to Assess Damages for Default Judgment.  On September 4, 2015, the Court held an evidentiary hearing and made the finding that Global

5

Defendants were responsible for executing and masterminding the "bait and switch" fraud scheme targeting online unsophisticated foreigners from the former Soviet Union and other countries by advertising vehicles for sale below the market value.  Defendant Kapustin, as owner of corporate Global Defendants, exercised complete dominion and control over the corporations and used the corporations as his alter egos for his own purposes, making all the decisions including the decisions to defraud Plaintiffs.

The Court further made its finding that Defendant Sergey Kapustin and corporate Global Defendants are a group of RICO persons, Global Companies Enterprise, associated in fact for the common purpose of engaging in fraudulent conduct constituting a RICO enterprise defined in 18 U.S.C. § 1961(4) functioning together as a continuing unit, each of them necessary to accomplish each step or aspect of the fraudulent scheme.  Defendant Sergey Kapustin and corporate Global Defendants acted in concert for the shared goal of defrauding overseas car buyers receiving profits from the fraudulent scheme.  This enterprise affected interstate and foreign commerce because it exported vehicles to foreign countries and both sent and received funds through banks in the United States and abroad.

Defendant Sergey Kapustin, who is a person within the meaning of RICO, managed and participated conducting the affairs of the Global Companies Enterprise through a pattern

6

of racketeering activity in violation of 18 U.S.C. §1962(c),
including multiple acts of wire fraud, mail fraud, and
financial fraud.  The Court found that Global Defendants
engaged in the pattern of racketeering activity, which
included related violations of 18 U.S.C. § 1343 (wire fraud);
18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1956 (money
laundering); 18 U.S.C. § 1957 (engaging in monetary
transactions in property derived from unlawful activity); 18
U.S.C. § 1952 (Travel Act), 18 U.S.C. § 1912 (witness
intimidation), as included in 18 U.S.C. 1961(1).

The pattern of the racketeering activity began no later
than some time in 2008 resulting in an investigation by
Attorney General for the State of New Jersey Division of
Consumer Affairs of deceptive conduct by Global Auto
Enterprise, resulting on November 19, 2010 in a consent
judgment for injunctive relief, civil penalties, legal fees
and restitution to victims.  The scheme continued in 2012 when
Global Defendants committed predicate acts of racketeering
towards Plaintiffs Yamkoviys, and continued through February
2014, when Defendants committed acts of wire fraud towards
Plaintiff Pukir.  Global Defendants continued the pattern by
filing fraudulent bankruptcies.  Global Defendants' acts were
arranged and ordered so as to exhibit both a relation between
the predicate acts and the threat of continuing unlawful
activity.

Defendants' numerous acts of mail fraud, wire fraud, and financial fraud were open-ended and occurring on an ongoing and daily basis targeting overseas car buyers from GlobalAutoUSA.com and other websites registered by Global Defendants with the intent to defraud foreign buyers. Plaintiffs were directly and proximately harmed by Global Defendants' predicate acts of racketeering, including wire fraud, mail fraud, and Travel Act violations, which resulted in ascertainable financial losses to the Plaintiffs.

Plaintiffs now seek judgment in their favor on the same RICO claims against Irina Kapustina and Michael Goloverya. Kapustina was the accountant for the Global Auto entities, as well as being listed as "president" of some of the entities. Goloverya was also listed as "president" of one of the Global Auto entities and had a signature stamp created so that he, or anyone else, could sign his name to corporate documents, such as invoices and tax returns. Kapustina is the former spouse of Kapustin, and they have a young child together. Kapustina is Goloverya's mother, but Goloverya has no relation to Kapustin.

Plaintiffs argue that these defendants were active participants in the RICO scheme to defraud plaintiffs. Plaintiffs argue that Kapustina and Goloverya diverted ill-gotten funds to personal accounts and otherwise had control over the Global Auto entities' bank accounts funded by plaintiffs and other victims. In contrast, Kapustina and

Goloverya argue that they too were victims of Kapustin, simply pawns in his car fraud scheme, and had nothing but the most basic involvement with the Global Auto entities.

## DISCUSSION

### A.    Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c). The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

### B.    Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence;

instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

To prove a claim under the federal civil RICO statute, a plaintiff must show: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  See 18 U.S.C. § 1962(c); Sedima, S.P.R.L, v. Imrex Company, Inc., 473 U.S. 479, 496 (1985).  A RICO enterprise exists only where (1) there is "an ongoing organization, formal or informal"; (2) "the various associates [of the enterprise] function as a continuing unit"; and (3) the enterprise exists "separate and

10

apart from the pattern of activity in which it engages."
United States v. Turkette, 452 U.S. 576, 583 (1981).  A
pattern of racketeering activity will exist only where there
are at least two predicate acts of racketeering.  See 18
U.S.C. § 1961(5); Sedima, 473 U.S. at 496 n.14.

One major element of a RICO enterprise is that it is "a
continuing unit that functions with a common purpose."  Boyle
v. United States, 556 U.S. 938, 948 (2009).  Even though RICO
participants "need not have been the masterminds of the scheme
to defraud, . . . the evidence must indicate that the
defendants had knowledge of the fraudulent nature of the . . .
operation and willfully participated in the scheme with the
intent that its illicit objectives be achieved."  United
States v. Pearlstein, 576 F.2d 531, 540-41 (3d Cir. 1978).

In this case, the alleged participants in Kapustin's RICO
scheme argue vehemently that they were pawns used by Kapustin
to perform certain administrative actions related to the
establishment of the Global Auto entities, as well as the day-
to-day accounts payable functions.  Kapustina and Goloverya
adamantly deny that they participated in Kapustin's ruses of
the international car buying customers, and they identify
themselves as victims of his schemes, albeit in a different
way from plaintiffs.

Plaintiffs have provided tangible, undisputable proof
regarding defendants' actions in their respective positions
with the Global Auto entities.  Plaintiffs argue that all

11

their evidence shows that defendants are liable as supporters of the enterprise, and that their failure to withdraw from the enterprise after their lawsuit was filed demonstrates a continued participation in the RICO scheme.

What is disputable, and actually disputed by defendants, is the "common purpose" element of a viable RICO violation. Defendants dispute that they willfully participated in the car fraud scheme with the intent that its illicit objectives be achieved.  Defendants do not deny their positions as "presidents" or their accounting duties, but they contend that they did not participate in perpetuating the car bait-and-switch activities.

The Court recognizes that the direct and circumstantial evidence presented by plaintiffs suggests that these two defendants, at a minimum, passively acquiesced to Kapustin's fraudulent activities.  The Court cannot determine on summary judgment, however, at least one element of a successful RICO violation claim – the shared purpose requirement.  Whether Kapustina and Goloverya acted as a unit with Kapustin to facilitate the fraud, or whether these defendants were simply pawns used by Kapustin, is a disputed issue that hinges on credibility determinations that the Court cannot make.

The Third Circuit has stated that "participation as a principal requires possession of the specific intent associated with the various underlying predicate offenses." Genty v. Resolution Trust Corp., 937 F.2d 899, 908 (3d Cir.

12

1991).  Even though "civil RICO requires no special mens rea beyond that associated with commission of a pattern of the individual predicate offenses, when . . . liability is premised on violations of the federal mail fraud statute, 18 U.S.C. § 1341, the defendants must have knowledge of the illicit objectives of the fraudulent scheme and willfully intend that those larger objectives be achieved."  Id.  It must be for the jury to decide whether Kapustina and Goloverya had knowledge of Kapustin's illicit objectives of the fraudulent car bait-and-switch scheme, and whether they willfully intended that Kapustin's efforts to defraud car buyers would be realized.

## CONCLUSION

For the reasons expressed above, plaintiffs' motion for summary judgment in their favor on their claims that defendants Irina Kapustina and Michael Goloverya violated RICO must be denied.  An appropriate Order will be entered.


Date:  April 5, 2016          s/ Noel L. Hillman   _
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.

13